# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

────────

No. 14-40579

────────

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2015

Lyle W. Cayce
Clerk

EDNA WEBB, Individually and as heir at law; KEVIN WEBB, Individually and as the representative of the Estate of Robert Allen Webb; CASEY AKINS, Individually and as heir at law; ESTATE OF ROBERT ALLEN WEBB; CHRISTIAN CARSON,

Plaintiffs - Appellees

v.

BRAD LIVINGSTON; WILLIAM STEPHENS; WARDEN RICK THALER,

Defendants - Appellants

-----------------------------------------------------

Cons. w/No. 14-40586

EDNA WEBB, Individually and as heir at law; KEVIN WEBB, Individually and as the representative of the Estate of Robert Allen Webb; CASEY AKINS, Individually and as heir at law; ESTATE OF ROBERT ALLEN WEBB; CHRISTIAN CARSON,

Plaintiffs

v.

BRAD LIVINGSTON; WILLIAM STEPHENS; WARDEN RICK THALER,

Defendants

---------------------------------------------------------

GWEN TOGONIDZE, as Next Friend of J.T., a Minor; J. T., a Minor,

Plaintiffs - Appellees

v.

No. 14-40579; 14-40586; 14-40756

BRAD LIVINGSTON; WILLIAM STEPHENS; WARDEN RICK THALER,

Defendants - Appellants

-----------------------------------------------------

Cons. w/ No. 14-40756

ASHLEY ADAMS, Individually and as the representative of the Estate of Rodney Gerald Adams; WANDA ADAMS, Individually; MARY LOU JAMES, Individually; CARLETTE HUNTER JAMES, Individually and as the representative of the Estate of Kenneth Wayne James; KRYSTAL JAMES, Individually and as heir-in-law to the Estate of Kenneth Wayne James; KRISTY JAMES, Individually and as heir-in-law to the Estate of Kenneth Wayne James; KENDRICK JAMES, Individually and as heir-in-law to the Estate of Kenneth Wayne James; ARLETTE JAMES, Individually and as heir-in-law to the Estate of Kenneth Wayne James; JONATHAN JAMES, Individually and as heir-in-law to the Estate of Kenneth Wayne James; KENNETH EVANS, Individually and as heir-in-law to the Estate of Kenneth Wayne James; CADE HUDSON, Individually and as the representative of the Estate of Douglas Hudson; ESTATE OF RODNEY GERALD ADAMS; ESTATE OF KENNETH WAYNE JAMES; ESTATE OF DOUGLAS HUDSON,

Plaintiffs - Appellees

v.

RICK THALER; WILLIAM STEPHENS; BRAD LIVINGSTON, Individually and in his official capacity,

Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 6:13-CV-711

2

No. 14-40579; 14-40586; 14-40756

Before STEWART, Chief Judge, HAYNES, Circuit Judge, and BROWN, District Judge.*

PER CURIAM:**

This consolidated appeal[1] arises from the heat-related deaths of five prisoners who died while housed in facilities operated by the Texas Department of Criminal Justice (TDCJ). Appellants Brad Livingston, William Stephens, and Rick Thaler, three top TDCJ executives, challenge the district court's decision to defer and carry their motions to dismiss on the basis of qualified immunity. The district court, agreeing in large part with the magistrate judge's report and recommendation, concluded that significant, unanswered questions made it unable to rule on Appellants' immunity defense. Therefore, the district court postponed ruling on Appellants' motions to dismiss until the parties completed court-ordered discovery limited to the issue of qualified immunity. Concluding that we lack jurisdiction over this appeal, we DISMISS.

I.

During the summers of 2011 and 2012, Robert Allen Webb, Alexander Togonidze, Rodney Adams, Kenneth Wayne James, and Douglas Hudson (collectively, decedents), five prisoners incarcerated in several TDCJ prison facilities, died from heat-related injuries. Following their deaths, the decedents' family members (Appellees) brought three separate lawsuits

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] On Appellants' motion, this court consolidated *Edna Webb, et al. v. Brad Livingston, et al.* No. 14-40579; *Gwen Togonidze, et al. v. Brad Livingston, et al.* No. 14-40586; and *Ashley Adams, et al. v. Brad Livingston, et al.*, No. 14-40756 for appeal, with *Webb* as the lead case.

No. 14-40579; 14-40586; 14-40756

asserting causes of action against several parties, including Brad Livingston, Rick Thaler, and William Stephens (Appellants) in their individual capacities. Relevant to the present appeal, Appellees claimed, under 42 U.S.C. § 1983, that Appellants acted with deliberate indifference to the decedents' health and safety needs in violation of the Eighth and Fourteenth Amendments.[2]

The complaints alleged that during the summer months, the prison facilities where the decedents were housed experienced outside temperatures above 100 degrees Fahrenheit for weeks at a time. These prisons did not have air conditioning in the inmate living areas, which routinely caused the indoor apparent, or "feels like," temperature to exceed 100 degrees. At such temperatures, heatstroke becomes "imminent" even for those in good health. However, the decedents were not in good health. Each decedent had a heat-sensitive disability that made them particularly vulnerable to heatstroke at high temperatures. Specifically, they suffered from hypertension, diabetes, depression or a combination thereof, which required them to take medications that interfered with their bodies' ability to regulate temperature. Appellees claimed that Appellants were aware of these alleged facts but failed to promulgate adequate policies to address the extreme heat endured by prisoners in the prison living areas. Appellees contended that Appellants' actions and inactions amounted to deliberate indifference, which proximately caused decedents' deaths.

Appellants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in each of the three lawsuits, asserting qualified immunity.

---

[2] Relatives of Douglas Hudson and Kenneth James also asserted a denial of medical care claim under the Eighth and Fourteenth Amendments, and all Appellees asserted claims under the Americans with Disabilities Act, Rehabilitation Act, and Texas state law for negligence. Those claims are not part of this appeal.

4

No. 14-40579; 14-40586; 14-40756

Addressing the motion filed in the *Webb* case, the magistrate judge concluded that discovery limited to Appellants' entitlement to qualified immunity was necessary to rule on the pending motion to dismiss. Accordingly, the magistrate judge recommended that Appellants' motion to dismiss be denied and that limited discovery be permitted on the issue of qualified immunity.

On *de novo* review, the district court agreed in substance with the magistrate's recommendation but disagreed in part with the recommended disposition. Instead of denying Appellants' motion to dismiss, the district court, relying on *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012), deferred and carried the motion to be revisited after the completion of discovery limited to Appellants' immunity defense. Pursuant to *Backe*, the district court reviewed the *Webb* complaint and concluded that, if true, the complaint's allegations were sufficient to overcome the Appellants' immunity defense. The district court further found that there were significant unanswered questions, which made it unable to rule on the immunity defense without clarification of pertinent facts and therefore ordered limited discovery.[3] Appellants timely appealed.

## II.

Though neither party addresses the issue of this court's jurisdiction to review the district court's order, "[w]e must, as always, determine our own jurisdiction before proceeding further." *Backe*, 691 F.3d at 647. Generally, this court lacks jurisdiction to review an order compelling limited discovery under

---

[3] Shortly after it issued its order in *Webb*, the district court, on the parties' joint recommendation, consolidated *Webb*, *Togonidze*, and *Adams*, for the purpose of discovery and other pre-trial matters. Subsequently, the district court issued its order in *Webb*, deferring and carrying Appellants' motions to dismiss and permitting discovery limited to qualified immunity, in the other two cases. All three complaints, signed by the same attorney, contain substantially similar factual allegations.

the final judgment rule. *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987) (citing 28 U.S.C. § 1291). "However, we have repeatedly held that a district court's order that declines or refuses to rule on a motion to dismiss based on a government officer's defense of qualified immunity is an immediately appealable order." *Zapata v. Melson*, 750 F.3d 481, 484 (5th Cir. 2014) (citations omitted). The court has reasoned that such an order is effectively a denial of qualified immunity, a disposition that is immediately appealable as a collateral final order. *See Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[4] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity extends beyond a defense to liability to protect government officials from the burdens of litigation, including "pretrial discovery, which is costly, time-consuming, and intrusive." *Backe*, 691 F.3d at 648 (citation omitted). Nevertheless, "qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Lion Boulos*, 834 F.2d at 507. Accordingly, this court has established a procedure by which a district court may defer ruling on the issue of qualified immunity if further factual

---

[4] To determine whether an official is entitled to qualified immunity, the court must conduct a two-step inquiry. First, the court must decide "whether the facts that a plaintiff has alleged . . . make out a violation of a consitutitonal right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Second, if the plaintiff has alleged a constitutional violation, the court must determine whether the right at issue was clearly established at the time of the alleged misconduct. *Id.*

development is required to determine the availability of that defense. *See Zapata*, 750 F.3d at 485; *Backe*, 691 F.3d at 648.

As a threshold matter, the district court must find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. If the complaint alleges facts sufficient to overcome the defense of qualified immunity, and the district court is "unable to rule on the immunity defense without further clarification of the facts," then it may allow discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.* (quoting *Lion Boulos*, 834 F.2d at 507–08) (internal quotation marks omitted).

When a district court complies with this procedure, this court lacks jurisdiction to review the interlocutory order. *Id.* However, the court does have jurisdiction if the district court: (1) fails to find that the complaint overcomes the defendant's qualified immunity defense; (2) refuses to rule on the qualified immunity defense; or (3) issues a discovery order that is not narrowly tailored to uncover facts relevant only to the issue of qualified immunity. *See id.* (citations omitted).

Our jurisdiction over this appeal hinges on the first and third inquiries, that is, whether the district court properly found that the complaint overcame Appellants' qualified immunity defense and whether the district court's

No. 14-40579; 14-40586; 14-40756

discovery order was narrowly tailored to uncover facts relevant to the defense.[5]

We review a district court's decision to defer ruling on a motion to dismiss and

its discovery order for abuse of discretion. *Id.* at 649.

A.

We must first determine whether the district court correctly concluded

that Appellees' complaint asserted facts, which, if true, would overcome

Appellants' qualified immunity defense. "To overcome the immunity defense,

the complaint must allege facts that, if proven, would demonstrate that

[Appellants] violated clearly established statutory or constitutional rights."

*Wicks*, 41 F.3d at 995. Such facts must be particular. *See id.* "A pleading that

offers labels and conclusions or formulaic recitation of the elements of a cause

of action will not do." *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635,

643 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))

(internal quotation marks omitted).

Appellees claim that Appellants' actions and inactions in the face of

extremely hot temperatures violated the decedents' Eighth Amendment right

to be housed in humane conditions of confinement. "The Constitution does not

mandate comfortable prisons . . . but neither does it permit inhumane ones."

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and

---

[5] The second scenario, in which the district court refuses to rule on the qualified immunity defense, is governed by *Helton*, 787 F.2d at 1017. There, this court held that a district court's order declining or refusing to rule on a motion to dismiss based on the defense of qualified immunity is an immediately appealable order. *Id. Helton*, however, announces a narrow holding that this court has refused to extend. *See Meza v. Livingston*, 537 F.3d 364, 367 (5th Cir. 2008). *Helton*'s narrow holding does not reach the facts of this case as there, the district court refused to rule on the defendant's immunity defense until trial, thus depriving defendant of his right not to stand trial. 787 F.2d at 1017. Here, by contrast, the district court deferred ruling on Appellants' immunity defense until the court could rule on the motion to dismiss or motion for summary judgment after the completion of limited discovery.

citation omitted). Indeed, the Eighth Amendment requires that prison officials "provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to ensure the safety of the inmates." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer*, 511 U.S. at 832).

A plaintiff must meet two requirements to establish an Eighth Amendment violation. First, "the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). Conditions of confinement that deprive an inmate of "the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted). Second, the plaintiff must show that the prison official acted with deliberate indifference to that known risk. *Farmer,* 511 U.S. at 834. A prison official acts with deliberate indifference if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Gates*, 376 F.3d at 333 (citation omitted).

Appellees' allegations, if true, satisfy both requirements. First, Appellees' allegations demonstrate that the decedents' exposure to extreme heat posed an objective and substantial risk of serious harm. It is well established in this Circuit that exposure to extremely hot temperatures presents a substantial risk of serious harm to inmate safety. *See Ball v. LeBlanc*, ---F.3d---, 2015 WL 4114473, at *4 (5th Cir. July 8, 2015) (affirming

the district court's finding that evidence of inmates' heightened vulnerability to high temperatures coupled with high summer temperatures in inmate housing posed a substantial risk of serious harm); *Gates*, 376 F.3d at 340 (determining that exposure to consistently hot temperatures constituted a substantial risk of serious harm to inmates); *Smith v. Sullivan*, 553 F.2d 373, 381 (5th Cir. 1977) (stating that "[i]f the proof shows the occurrence of extremes of temperature that are likely to be injurious to inmates' health[,] relief should be granted").

Second, Appellees' complaint sufficiently alleges that Appellants knew of, but were deliberately indifferent to, this known risk of harm. The complaint alleges that Appellants knew: the prison locations where the decedents were housed were experiencing a severe heatwave with temperatures in the hundreds; the prisons' indoor temperatures routinely exceeded 100 degrees; the inmate living areas were not air conditioned or otherwise cooled to bring down these extreme temperatures; and such extreme temperatures made heatstroke imminent, especially for those with heat-related vulnerabilities like decedents. The complaint also alleges that Appellants discussed the risk posed by inmate exposure to extreme heat, routinely reviewed documents reporting heat-related injuries suffered by prisoners and staff, sent out an informal email warning of the risk, and provided (inadequate) training to correctional officers highlighting the warning signs of heat-related illness. Despite this knowledge, the complaint alleges that Appellants inadequately responded to the risk or took no action to protect heat-sensitive inmates, like the decedents, from the extreme heat. These allegations, if true, can demonstrate that Appellants acted with deliberate indifference to a known risk. *See Ball*, 2015 WL 4114473 at *6 (concluding that officials' failure to act despite their awareness of extremely high indoor temperatures, review of records listing those prisoners

No. 14-40579; 14-40586; 14-40756

that were susceptible to heat, and articulated concern about the high temperatures was sufficient to show deliberate indifference).  Moreover, the open and obvious nature of the alleged conditions further supports the reasonable inference that Appellants were deliberately indifferent.[6] *See Gates*, 376 F.3d at 340 (affirming trial court's finding of a prison system's deliberate indifference based on the open and obvious nature of extreme heat in prison facilities).

Having determined that Appellees' complaint sufficiently alleges facts, taken as true, to state a violation of decedents' Eighth Amendment right, we must next determine whether that right was clearly established.  We conclude that it was.  To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In other words, the court must determine "whether the state of the law in [2011] gave [Appellants] fair warning that their alleged treatment of [the decedents] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  A prisoner's right to be free from extreme temperatures was clearly established in 2011.[7]

---

[6] Contrary to Appellants' suggestion, Appellees' allegations that Appellants failed to promulgate adequate policies despite knowing the effect of extreme heat on heat-sensitive prisoners like the decedents, if true, could support the imposition of supervisory liability. *See Sanders v. Foti*, 281 F.3d 1279 (5th Cir. 2001) (per curiam) (unpublished) (holding that allegations that a state prison system's executive failed to establish a policy to prevent constitutional violations, which led to plaintiff's harm, were sufficient to establish supervisory liability); *Stitt v. Klevenhagen*, 50 F.3d 1032 (5th Cir. 1995) (per curiam) (unpublished) (concluding that supervisory liability could be established where complaint alleged that the supervisor was aware of a constitutional violation, failed to correct it, and the supervisor's failure caused the plaintiff's injury).

[7] Appellants acknowledged at oral argument that decedents had a clearly established right to be free from extreme temperatures.  Nevertheless, they maintained that this is too broad a pronouncement of the governing law to have alerted them that their alleged mistreatment of the decedents violated their constitutional rights.  Relying on *Gates v. Cook*, where this court upheld an injunction requiring Mississippi prison officials to provide fans,

11

No. 14-40579; 14-40586; 14-40756

*See Wilson,* 501 U.S. at 304 (proposing that "a low cell temperature at night combined with a failure to issue blankets" can violate the Eighth Amendment); *see also Gates*, 376 F.3d at 339–40; *Sullivan*, 553 F.2d at 381.

By containing facts, which, if true, demonstrate that Appellants violated the decedents' clearly established Eighth Amendment right to be free from extreme heat, Appellees' allegations are sufficient to overcome Appellants' qualified immunity defense. *See Wicks*, 41 F.3d at 995. Because the district court properly conducted this threshold inquiry, it was within its discretion to

---

additional access to ice water, and daily showers, 376 F.3d at 339–40, Appellants contended that the clearly established law of this Circuit held that subjecting inmates to extreme temperatures *without remedial measures* is unconstitutional. We disagree. Appellants have pointed to no case law that so narrowly defines the boundaries of the clearly established law within this context. Indeed, *Valigura v. Mendoza*, a case on which Appellants also relied, broadly defined the contours of the inmate's right, concluding that as of 2004, "it was clearly established that [the inmate] had a right to be free from cruel and unusual punishment," which included the right not to be subject to extremely hot temperatures. 265 F. App'x 232, 236 (5th Cir. 2008) (per curiam). We further observed that "the contours of these rights were sufficiently clear at the time of the alleged deprivation." *Id.*

Moreover, even assuming *arguendo* that Appellants have offered a correct statement of the clearly established law, the mere presence of remedial measures would not end the inquiry, as such measures must be adequate. Indeed, we have affirmed determinations that prison officials violated the Eighth Amendment despite evidence that the officials implemented the remedial measures approved in *Gates*, where such measures proved inadequate to protect inmates from the extreme heat. *See Ball v. LeBlanc*, ---F.3d---, 2015 WL 4114473, at *4 (5th Cir. July 8, 2015); *Blackmon v. Garza*, 484 F. App'x 866, 871–72 (5th Cir. 2012) (per curiam). Appellees allege that Appellants' remedial measures were inadequate to protect decedents from the extreme heat. These allegations, which we must accept as true, can overcome Appellants' immunity defense.

Finally, our conclusion is not out of step with the Supreme Court's recent decision in *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). There, the Court faulted the Third Circuit Court of Appeals for holding that an inmate had a clearly established Eighth Amendment right to the proper implementation of adequate suicide prevention protocols, when there was no decision of the Supreme Court that "even discusses suicide screening or prevention protocols," and the Third Circuit's own case law did not clearly recognize that such a right existed. *Id.* at 2044. By contrast, Supreme Court case law strongly suggests, *see Wilson*, 501 U.S. at 304, and our precedent establishes that an inmate has a constitutional right to be free from extreme temperatures. *See Gates,* 376 F.3d at 339–40*; Sullivan,* 553 F.2d at 381.

determine whether limited discovery was necessary to rule on Appellants' entitlement to the immunity defense. *See id.*

B.

We next address whether the district court's discovery order was "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Backe*, 691 F.3d at 648 (internal quotation marks and citation omitted). After concluding that the complaint pleads facts sufficient to overcome an asserted qualified immunity defense, a district court may permit limited discovery relevant to the defense. *See id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc) (allowing a district court to order limited discovery if "it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise genuine issues as to the illegality of defendant's conduct at the time of the alleged acts").

As previously mentioned, an order compelling limited discovery is not generally appealable under the final judgment rule. *Lion Boulos*, 834 F.2d at 506. However, "in qualified immunity cases such as this one, immediate appeal is available for discovery orders which are either avoidable or overly broad." *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991). A district court's discovery order is neither avoidable nor overly broad, and therefore not immediately appealable, when: (1) the defendant's entitlement to immunity turns at least partially on a factual question; (2) the district court is unable to rule on the immunity defense without clarification of these facts; and (3) the discovery order is narrowly tailored to uncover only the facts necessary to rule on the immunity defense. *Lion Boulos*, 834 F.2d at 507–508.

Applying the first factor, the district court properly concluded that Appellants' entitlement to qualified immunity turned at least partially on an issue of fact. To determine whether Appellants are entitled to qualified

13

immunity, the district court must evaluate whether Appellants acted with deliberate indifference by subjectively disregarding a known risk, *Farmer*, 511 U.S. at 834, and whether the Appellants actions were objectively reasonable despite the alleged deliberate indifference. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Appellants' subjective knowledge is a question of fact, *Gates*, 376 F.3d at 333, which this court has recognized is "peculiarly within the knowledge" and possession of Appellants. *See Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (quoting *Schultea*, 47 F.3d at 1432). Therefore, the district court did not err in concluding that Appellants' immunity defense, which required an inquiry into Appellants' alleged deliberate indifference, turned in part on an issue of fact.

Moving to the second factor, the district court was within its discretion in concluding that it was unable to rule on the immunity defense without further clarification of the facts. To rule on the immunity defense, the district court must assess "whether the official's conduct would have been objectively reasonable at the time of the incident." *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014). This determination is complicated when, as here, the deliberate indifference standard must be reconciled with the second prong's objective reasonableness standard. As this court has explained, "[o]bviously, the analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). Otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328 (5th Cir. 1998). "Accordingly, . . . the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident." *Id.* In light of these complexities, we have

No. 14-40579; 14-40586; 14-40756

observed that "[a]dditional facts . . . are particularly important when evaluating the second prong of the qualified immunity test." *Morgan*, 335 F. App'x at 473. Therefore, the district court did not err in concluding that further factual clarification was necessary to resolve the immunity issue. *See id.*

Finally, under the third factor, the limited discovery is narrowly tailored. The ordered discovery seeks to reveal what Appellants knew, when they knew it, and what actions (or inactions) they took in light of this knowledge. Moreover, the district court was careful to prevent discovery that pertained to the merits of Appellees' underlying claims, and excluded discovery relevant to other heat-related litigation. Consequently, the district court's discovery order is narrowly tailored to uncover only the facts necessary to rule on the immunity defense.

Because the immunity defense turns on an issue of fact, the district court concluded that it could not determine Appellants' entitlement to the defense without discovery, and discovery was limited to the issue of qualified immunity, the district court did not abuse its discretion. *Backe*, 691 F.3d at 649. Accordingly, this court lacks jurisdiction to review the district court's discovery order. *Lions Boulos*, 834 F.2d at 508.

### III.

In sum, the district court's proper adherence to Circuit procedure in deferring its ruling on Appellants' motions to dismiss and ordering discovery narrowly tailored to the issue of qualified immunity deprives this court of jurisdiction over this appeal. Accordingly, we DISMISS for lack of jurisdiction.[8]

---

[8] Both Appellants and Appellees filed an opposed motion for judicial notice. In light of the disposition of this appeal, all pending motions are DENIED.

15